UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

PATRICIA FAJARDO-GUEVARA

CRIMINAL ACTION

NO. 10-151-BAJ-SCR

# RULING ON MOTION TO SUPPRESS

## FACTS

On May 17, 2010, Corporal Tommy Banks stopped Defendant, Patricia Fajardo-Guevara, while on a routine patrol on Interstate 12 eastbound in Baton Rouge, Louisiana (doc. 12, p. 1). At the hearing, Corporal Banks testified that he stopped Defendant after he observed her changing lanes without using signal lights and because the bracket surrounding Defendant's license plate obscured the state name in violation of state law (doc. 14, p. 2). During the stop, Corporal Banks briefly questioned Defendant about her recent whereabouts (Ex. 1). Defendant told Corporal Banks that she was "tired," and was traveling to Atlanta after spending a week in Texas in search of employment (*Id*). Corporal Banks asked Defendant in which city of Texas she had stayed, and Defendant was initially unable to identify the city in Texas. The video reflects that Defendant eventually responded with a word that sounded like "Woodville" (Ex. 1). In an attempt to refresh Defendant's memory, Corporal Banks tried to clarify the name of the city by asking Defendant if it was near Houston, or other big cities in Texas

(Ex. 1; hearing). However, Defendant claimed that she was unable to remember (Ex. 1; hearing).

Corporal Banks also asked Defendant about her employment status (Ex. 1; hearing). Defendant responded that she was currently unemployed, but that she sometimes worked in the medical profession (doc. 14, p. 3). Corporal Banks noted that Defendant was unable to name a specific job; however, she gestured and tried to explain that she did blood work (Ex. 1; hearing). Defendant was able to answer questions Corporal Banks posed to her regarding her arrest status and whether she had ever been issued a traffic ticket (Ex. 1; hearing). Defendant stated that she had never been arrested, and that she had previously received a traffic ticket for running a red light (Ex. 1; hearing).[1] Corporal Banks testified that his suspicion was aroused by Defendant's answers to his questions, and because throughout the duration of the stop "defendant's hand [sic] were constantly shaking and the shaking intensified as they approached her vehicle for insurance documents. He also observed the defendant's neck visibly pulsating" (doc. 14, p. 3). Corporal Banks also testified that Defendant tried to hide her shaking hands behind her back.

After questioning Defendant, Corporal Banks took her license and insurance information to his patrol car, while Defendant waited on the shoulder of

---

[1] The Court notes that the Government established that Defendant "demonstrated sufficient understanding of the English language to communicate with Corporal Banks," as she was able to comprehend and answer those questions in English (Ex. 1; hearing; doc. 14, p. 7).

the interstate (Ex. 1). Corporal Banks stated that he followed a Baton Rouge Police Department protocol by calling for back-up as he initiated a check on defendant's license and insurance information. Corporal Banks testified that he "called for back-up" because he suspected that Defendant was trafficking illegal narcotics based on her shaking hands, pulsating neck, inability to answer questions about the city from which she was travelling in Texas, her employment status, and the fact that she was on a highway often used to traffic drugs. Corporal Banks noted that based on his training and expertise, narcotics smugglers do not give the name of the city from which they are travelling. Corporal Banks further testified that he called for assistance because drug traffickers are often "trailed," and he also wanted someone who would be able to keep the nervous Defendant from wandering onto the busy interstate while he searched her vehicle.

After Corporal Banks completed his check on Defendant's status and told Defendant that he would not issue her a citation, he asked Defendant if she would consent to a search of her vehicle. He testified that he communicated to the Defendant in both the English and Spanish languages (doc. 14, p. 3; Ex. 1). Defendant alleges that the video demonstrates the difficulty she has understanding and speaking English (doc. 12, p. 1). However, the Court finds that the video also demonstrates that Corporal Banks made his intention to search her vehicle very clear, as he—again and again—asked the Defendant "si

3

o no" in the Spanish language (Ex. 1). Though in the video of the stop "defendant repeatedly told Corporal Banks that she had 'no problem' with the search and told him she 'thinks' he can search," Defendant never said yes, no, or si (doc. 12, p. 1; Ex. 1).

The video demonstrates that less than four minutes elapsed between the time Corporal Banks informed Defendant that he would not issue her a citation, and Corporal Banks walking Roux, his trained narcotics detection canine, around Defendant's vehicle (Ex. 1). One of the back-up officers, Officer Averette, turned off Defendant's vehicle, and removed her keys from the ignition (Ex. 1). Corporal Banks testified that Officer Averette turned off the vehicle to follow standard protocol, and to protect Roux from burning her nose on the vehicle's muffler. During the sweep of the exterior of Defendant's vehicle, Roux alerted Corporal Banks to the presence of narcotics at the rear passenger door by scratching and jumping on the door (doc. 14, p. 3; Ex 1).

Corporal Banks and the other two officers searched the backseat and trunk of the vehicle, and found "a false compartment under the rear passenger seats" (doc. 14, pp. 3-4). Although Corporal Banks was unable to open the false compartment at the scene of the stop, he testified that he was able to see evidence of narcotics. Corporal Banks then placed Defendant under arrest, hand-cuffed her, and placed her in the back seat of a patrol car (Ex. 1). Corporal Banks testified that based on his experiences of searching vehicles, and how

many vehicles he has searched, he noticed evidence of "after market wells" that were placed in the vehicle after it was manufactured. Corporal Banks further testified that he later drove Defendant's vehicle to the Baton Rouge Drug Enforcement Agency, where approximately nine kilograms of cocaine were recovered from the rear compartment with a saw. In addition, officers located two cellular phones, a laptop computer, $453 in United States currency, and credit cards" (doc. 14, pp. 3-4; hearing). The video shows that the entire stop lasted less than twenty minutes (Ex. 1).

## DISCUSSION

Defendant does not challenge the validity of the initial traffic stop. Rather, she argues that Corporal Banks neither obtained her consent before searching her vehicle, nor did he have the requisite reasonable suspicion supported by articulable facts, as he did not issue her a citation, and her status check came back confirming that she had no criminal record. The Government argues that Corporal Banks had reasonable suspicion, as Defendant was traveling on an interstate commonly used to traffic illegal narcotics, appeared nervous, and could not give Corporal Banks answers to his questions about the city in which she claimed to have stayed for a week. Nor could she answer questions regarding her employment status. Further, Corporal Banks testified Texas is considered a source area for illegal narcotics.

In *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), the Supreme Court articulated a

two-tiered reasonable suspicion inquiry to analyze the legality of a police officer's conduct when he stops a person for Fourth Amendment purposes: 1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. In *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 880-84 (1975), the *Terry* standard was extended to the temporary detention of persons in vehicles. The Fifth Circuit elaborated on the second prong of the *Terry* test in *U.S. v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010):

> An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime. If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion.
> We have held that an officer may examine driver's licenses and vehicle registrations and run computer checks as part of his investigation of the circumstances that originally caused the stop. He may also ask about the purpose and itinerary of the occupants' trip as part of this investigation, because we consider these questions to be reasonably related in scope to his investigation of the circumstances that caused the stop. Additionally, we have held that an officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop. The

> reasoning behind this rule is that the Fourth Amendment protects against detention, not questioning.

*U.S. v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010) (internal citations omitted). As Defendant does not challenge the reasons cited by Corporal Banks in stopping Defendant (the traffic stop), the Court will accept such reasons as justified, thereby satisfying the first prong of the *Terry* test. As Corporal Banks gave a valid reason for stopping Defendant, the Court will only consider the second prong of the *Terry* test.

Regarding the second prong of the *Terry* test, Defendant argues that Corporal Banks should not have detained her once he decided not to issue her a traffic citation (doc. 12, p. 2). In *U.S. v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004), the court held that officers could investigate not only a hunch that the vehicle might have been stolen, but also the possibility that the driver may have been trafficking narcotics. Thus, officers have broad discretion to determine whether something illegal is afoot when conducting a traffic stop, even absent an immediate determination that a specific crime is being committed. However, the Fifth Circuit in *U.S. v. Pack*, 612 F.3d 341, 357 (5th Cir. 2010) noted that *Brigham* does "not allow police officers to detain an individual indefinitely, fishing for evidence of every conceivable crime that might explain the suspicious facts they articulate as having created their reasonable suspicion."

The Court finds that Corporal Banks had more than a "hunch" that Defendant was trafficking narcotics. He engaged in a colloquy with Defendant, for a reasonable length of time about her whereabouts, and also assessed her mannerisms (Ex. 1). Defendant was reluctant to answer Corporal Banks' questions, and was unable to answer many of his inquiries (Ex. 1). Corporal Banks testified that Defendant continuously attempted to hide her "shaking hands" behind her back. He further testified that Defendant told him she was coming from Texas – a known source area for illegal narcotics.

Moreover, Corporal Banks did not detain Defendant "indefinitely," as less than twelve minutes elapsed between the initial stop and the point when Corporal Banks and Roux swept Defendant's vehicle (Ex. 1).[2] As such, the Court finds that Corporal Banks had a reasonable, articulable suspicion to extend the stop for a reasonable period of time.[3] Once the canine alerted Corporal Banks to the presence of illegal narcotics in Defendant's car, the requisite probable cause to justify the search of Defendant's vehicle was established. Accordingly, the second prong of the *Terry* test was satisfied.

---

[2] As noted *supra*, less than four minutes elapsed between Corporal Banks informing Defendant that he would not issue her a traffic citation, and Corporal Banks walking Roux around Defendant's vehicle. The Court also notes that the entire duration of Defendant's stop lasted less than twenty minutes.

[3] Further, Corporal Banks testified that while Defendant's vehicle was detained, she was "free to go" at any time. The Court also notes that despite what Defendant alleges in her motion, pursuant to *Ohio v. Robinette*, 519 U.S. 33, 35-6 (1996), Corporal Banks had no obligation to inform Defendant that she was free to go after he returned her license and insurance card.

For the reasons above, having found that the non-consensual search was justified under *Terry*, it is unnecessary to consider the issue of whether Defendant consented to a search of her vehicle.[4]

## CONCLUSION

For the foregoing reasons, the motion to suppress (doc. 12), filed by Defendant, is hereby **DENIED**.

Baton Rouge, Louisiana, March 4, 2011.

BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[4] The Fifth Circuit Court of Appeals has held that a "dog sniff" is not considered a search under the Fourth Amendment. "A dog sniff is not a search. Furthermore, the officers did not need reasonable suspicion as a prerequisite to the dog sniff." *U.S. v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993). "A canine 'sniff' of the exterior of a car does not constitute a search within the fourth amendment." *U.S. v. Hernandez*, 976 F.2d 929 (5th Cir. 1992). *See also U.S. v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).